# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# Harrisonburg Division

| | |
|---|---|
| **JOYCE FLORES** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 5:20-cv-00087 |
| ) | |
| **VIRGINIA DEPARTMENT OF** ) | |
| **CORRECTIONS,** ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

COMES NOW Plaintiff Joyce Flores ("Plaintiff" or "Flores"), by counsel, and alleges as follows against Defendant Virginia Department of Corrections:

### PRELIMINARY STATEMENT

1. This is an action pursuant to Title VII of the Civil Rights Act ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), to correct and remedy the unlawful employment practices complained of herein.

2. Plaintiff was employed by Defendant until her unlawful termination from employment because of her sex and/or medical condition related to pregnancy.

### JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S. § 2000e-5(f).

4. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 as the Defendant operates in the judicial district and division and a substantial part of the events giving rise to the claims occurred in the judicial district and division.

5. Plaintiff has exhausted all required administrative procedures and timely filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") for her Title VII claims. The EEOC has issued a Notice of Right to Sue, and this suit has been brought within 90 days of Plaintiff's receipt of such Notice.

## PARTIES

6. Plaintiff is a citizen of the United States and a resident of Henrico County, Virginia. Plaintiff was employed by Defendant at all times relevant hereto.

7. Defendant Virginia Department of Corrections ("VDOC") is the executive agency responsible for operating and maintaining correctional facilities within Virginia, including Augusta Correctional Center.

## FACTUAL ALLEGATIONS

### VDOC Admits it "Can't Tell if it's Drugs or a Tampon"

8. On or about September 17, 2018, VDOC's Corrections Officer Chief, A. David Robinson issued a memorandum to all VDOC Regional Operations Chiefs, Regional Administrators, and Wardens that praised VDOC's body scan security technology and, citing to "recent inquiries about feminine hygiene products being an ideal way to conceal contraband," advised that "offender visitors shall be notified that the use of tampons and or menstrual cup products are no longer permitted to be worn during visitation."

9. The new VDOC policy was soon made public in national and local press articles. In response to the press, a VDOC spokeswoman stated that it was decided that facilities would

offer pads to women who are wearing tampons while visiting a prison, *so the tampons do not appear as possible contraband on a body scan.*[1]

10. The new VDOC policy was quickly met with public criticism from the American Civil Liberties Union ("ACLU") of Virginia and other human rights organizations for being discriminatory on the basis of sex.

11. The following week, on September 25, 2018, Virginia Secretary of Public Safety, Brian Moran, announced that VDOC was suspending the ban on tampon use by visitors to VDOC's prisons.[2]

12. Nevertheless, in January 2019 it was made public that VDOC was still treating visitors that were wearing tampons or menstrual cups differently than other visitors to the prisons. In response to questioning by members of the General Assembly, Margie Vargo, VDOC's Corrections Operations Administrator stated that, "[w]e can't tell what's in someone as they go through a body scanner. *We just can't tell if it's drugs or a tampon*. It just shows there's something wrong."[3]

13. On information and belief, at no point did VDOC attempt to bar VDOC employees from wearing tampons or menstrual caps to work at VDOC facilities. However, employees pass through the same body scanners when arriving to work each day as offender visitors do when they visit a VDOC facility. Therefore, the same issue of "not being able to tell if it's drugs or a tampon" applied to employees wearing tampons and/or menstrual caps to work at VDOC facilities.

---

[1] Frank Green, Virginia prison visitors to be barred from wearing tampons; contraband concern cited, Richmond Times Dispatch, Sept. 24, 2018.
[2] Tom Jackman, Update: Va. suspends ban on tampons in prison, Washington Post, Sept. 25, 2018.
[3] Ned Oliver, Prison officials say they're still blocking women wearing tampons from full visitation privileges over contraband concerns, Virginia Mercury, Jan. 17, 2019.

**Plaintiff Begins Work as Dental Hygienist at VDOC**

14.     In March 2019, Plaintiff began work as a Registered Dental Hygienist at VDOC's Augusta Correctional Center ("ACC") in Craigsville, Virginia.

15.     Plaintiff was placed at ACC through a staffing company, NCVA Medical Staffing, Inc., but the terms and conditions of her employment were controlled by VDOC. VDOC provided the dental tools and dental equipment for Plaintiff to perform her job. Plaintiff exclusively performed dental hygienist services within the ACC compound. Plaintiff's direct supervisor (Dr. Werner Wiedemann, DDS) was a VDOC employee. Plaintiff's schedule was set by VDOC. Plaintiff's employment and day to day activities at ACC were supervised by VDOC personnel and subject to VDOC's policies and rules. Plaintiff solely worked for VDOC during the relevant time-period and her assignment at VDOC was not deemed temporary or otherwise limited in timeframe. Finally, Plaintiff's employment was terminated at the directive of VDOC employee, Warden John Woodson. As such, VDOC was Plaintiff's joint employer within the meaning of Title VII.

16.     Plaintiff has extensive experience in the field of dental hygiene, having previously been on the faculty as a professor at the Gene W. Hirschfield School of Dental Hygiene at Old Dominion University for over twelve years. During her employment with VDOC, she was successful in her job and consistently met VDOC's legitimate employment expectations.

**Events of July 17, 2019**

17.     On July 17, 2019, Plaintiff made the long commute from her main residence in Sandston, Virginia to work at ACC. On the morning of her two-hour commute, she was experiencing the heavy phase of her menstrual cycle and placed a super absorbent tampon in her vagina. A tampon may appear slender when dry, but it is designed to expand upon saturation. Plaintiff's menstrual cycle had been increasingly heavy as she began to go through perimenopause.

4

18. At approximately 8:30 AM, Plaintiff arrived at the entrance to ACC and immediately processed through the normal security protocol, with the now expanded, saturated tampon in her vagina, including passing through the body scanner, without incident.

19. After clearing security, Plaintiff entered the prison compound and went to her dental office to begin preparing for patients she would treat throughout the day. Soon after, she went to the restroom and changed her expanded, saturated tampon and replaced it with a dry one. Sometime later in the morning, she rushed back to the restroom for a bowel movement, during which she realized she needed to change her tampon again but had not brought a new one to the restroom with her. She knew she had a patient waiting for her to return, so she removed the tampon and replaced it with a small amount of tissue paper.

20. Within a few minutes of returning to her office from the restroom, VDOC employee, Sgt. Benjamin Lokey, came to her office and asked that Plaintiff accompany him to the security check at the entrance of the facility. The time was approximately 10:30 AM and Plaintiff had been at work for approximately two hours already.

21. Once at the security checkpoint, Sgt. Lokey instructed Plaintiff to go through the body scanner, which she complied with.

22. Sgt. Lokey then took Plaintiff to a separate room, where they were joined by a female VDOC security investigative officer, and Sgt. Lokey began to interrogate Plaintiff. Sgt. Lokey advised Plaintiff that he believed her body scan image from her arrival in the morning (2 hours earlier) contained a suspicious item in her vagina that was not present on the body scan image taken moments earlier.

23. Plaintiff explained that she had a saturated tampon in her vagina following her 2-hour commute when she arrived in the morning and did not have a tampon in during the second,

later, scan because she had removed it in the restroom shortly before. Plaintiff than offered to go into the restroom with the female VDOC security officer to demonstrate that she was menstruating.

24. Two female officers accompanied Plaintiff to restroom and one officer accompanied her to the stall where she confirmed that she did not have a tampon in, but that there was tissue with menstrual fluid on it, which she had removed from her vagina.

25. Plaintiff then offered to put in a new tampon in and go through the body scanner a third time, which the VDOC officers agreed to, and Plaintiff did. While going through the body scanner a third time, Plaintiff noticed multiple VDOC security staff taking pictures of the image of her body scan with their personal cell phones.

26. At this point, Plaintiff was required to return to the separate room with Sgt. Lokey where he continued to interrogate Plaintiff under suspicion of bringing contraband to the facility, which Plaintiff continued to vehemently deny and again explain that she had a tampon in when she arrived and further explained (again) why she did not have one in for the second scan.

27. Finally, Plaintiff was brought to the office of Warden John Woodson and, again, despite their being no objective evidence, he questioned Plaintiff about bringing contraband into the facility. Plaintiff provided the same, consistent, and accurate explanation for the body image scans that day. For the first time, in the Warden's office, Plaintiff was shown the images from the body scans, the first clearly showed the saturated tampon, the second when Plaintiff had no tampon, and the third with new tampon. Plaintiff urged the Warden and VDOC to contact the body scanner manufacturer so that they could get a better understanding of what they were seeing.

28. At the conclusion of the meeting, Warden Woodson stated he was placing Plaintiff on paid administrative leave for "suspicion of contraband."

29. Plaintiff was then brought back to the separate room and made to wait for what seemed like hours. Plaintiff later learned that VDOC was conducting a K9 search of the entire medical unit and dental area, where they did not find any contraband.

30. VDOC also requested Plaintiff's permission to conduct a full K9 search of her car in the parking lot, which she consented to. Again, no contraband was found.

31. After the K9 searches, Sgt. Lokey gave Plaintiff a box containing her personal belongings, that had been searched through, and told her to go home and wait for Warden Woodson to call her.

## VDOC Terminates Plaintiff Employment

32. Approximately three days later, Warden Woodson called Plaintiff to tell her he had checked with his supervisor but that he needed more time to make a decision. Plaintiff again pleaded with him to seek subject matter expertise and/or manufacturer input on VDOC's knowingly erroneous read of the body scan images.

33. Having not heard anything further, on July 31, 2019, Plaintiff called Warden Woodson back requesting to return to work. Warden Woodson responded by saying he was, "leaning toward termination." Plaintiff then asked him again if he checked with the manufacturer or a subject matter expert on the scans. Warden Woodson raised his voice and said, "I checked with my supervisor." At that point, he advised Plaintiff over the phone that VDOC was terminating her employment due to "suspicion of contraband."

34. At no point did Plaintiff bring or attempt to bring contraband into ACC. The reason provided by VDOC for the termination is pretext for sex discrimination. Plaintiff's employment was terminated because she was a menstruating female utilizing a feminine hygiene product when she arrived to work on July 17, 2019.

7

35. On information and belief, no male employees have been terminated due to perimenopause, menstruation, or utilizing a female hygiene product.

## COUNT I
### Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*
### Unlawful Discrimination

36. Plaintiff incorporates by reference and re-alleges the preceding paragraphs as though fully set forth herein.

37. At all times relevant hereto, Plaintiff was a female with a medical condition related to pregnancy subject to the protections of Title VII, as amended by the Pregnancy Discrimination Act.

38. At all times relevant hereto, Plaintiff was capable and qualified to perform her job as Dental Hygienist at VDOC and consistently met VDOC's legitimate employment expectations.

39. Defendant VDOC, Plaintiff's joint employer within the meaning of Title VII, intentionally discriminated against Plaintiff because of her sex and/or a medical condition related to pregnancy by terminating her employment.

40. Defendant VDOC, Plaintiff's joint employer within the meaning of Title VII, maintains a policy and practice of using body scans to screen employees, and then terminating employees based on the body scans, that has a disparate impact on female employees and/or employees with medical conditions related to pregnancy.

41. On information and belief, male employees and/or employees not experiencing perimenopause and/or menstruation have not been terminated from employment for utilizing a feminine hygiene product.

42. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer injury and damages including mental anguish, pain, suffering, loss income,

litigation expenses including attorneys' fees and costs, medical expense, consequential damages, and other injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joyce Flores requests judgment against Defendant Virginia Department of Corrections as follows:

    A.    For appropriate declaratory relief declaring the acts and practices complained of herein in violation of Title VII;

    B.    For an award of compensatory and punitive damages in the amount of $300,000, plus back-pay damages, with interest at the prevailing rate;

    C.    For equitable relief including reinstatement, or front pay in lieu of same;

    D.    For an award of reasonable attorneys' fees and costs, including expert witness fees expended; and

    E.    For such other and further relief to which Plaintiff may show she is justly entitled.

**TRIAL BY JURY IS DEMANDED**

                                                Respectfully submitted,
                                                JOYCE FLORES

                                                _/s/ *Paul M. Falabella*_____

Harris D. Butler, III (VSB No. 26483)
Paul M. Falabella (VSB No. 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: harris.butler@butlerroyals.com
paul.falabella@butlerroyals.com