IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOYCE FLORES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:20-cv-00087 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| VIRGINIA DEPARTMENT OF | ) By: Hon. Thomas T. Cullen |
| CORRECTIONS, | ) United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff Joyce Flores filed this suit against Defendant Virginia Department of Corrections ("VDOC") alleging unlawful termination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act. VDOC fired Flores, a dental hygienist, on the suspicion that she had smuggled contraband into its facility. A body scan taken of Flores on the date of the incident revealed a foreign object in her body cavity. Flores claims that she was menstruating, and what appeared to VDOC to be contraband was actually a tampon. The parties are set to try this claim before a jury.[1]

In advance of that trial, Flores and VDOC filed motions *in limine* seeking to restrict the testimony of the opposing side's experts. Specifically, Flores moves to exclude the testimony of Yulonda Wyche, VDOC's Security Program Coordinator, about Flores's body scan and the sufficiency of the training VDOC employees receive on the security scanner system. (*See* ECF No. 52.) VDOC seeks to exclude the testimony of three of Flores's experts: Dr. Maria

---

[1] Trial was originally set to begin on October 13, 2021, but has been continued and will now begin on May 23, 2022.

Christina Munoz, who would testify about the science of menstruation, perimenopause, and the use of feminine hygiene products (*see* ECF No. 54); Dr. Keyhill Sheorn, a psychiatrist who would tesify about the sexual trauma Flores experienced during this incident and her increased likelihood for developing post-traumatic stress disorder ("PTSD") (*see* ECF No. 60); and Dr. Jordan Haber, a radiologist who would opine that the object depicted in Flores's body scan is consistent with a saturated tampon (*see* ECF No. 75).

In addition to reviewing the relevant portions of the record and the parties' briefing on these motions, the court held a hearing on the issues on October 14, 2021. For the reasons explained below, the court will grant in part and deny in part Flores's motion *in limine*. As to VDOC's motions, the court will grant in part and deny in part the motion to exclude the testimony of Dr. Munoz; grant the motion to exclude the testimony of Dr. Sheorn; and deny the motion to exclude the testimony of Dr. Haber.

## I.  STANDARD OF REVIEW

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decisions in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Collectively, these "impose[] a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (cleaned up); *see Daubert*, 509 U.S. at 597. Because expert evidence can be particularly persuasive to a jury, "the importance of the gatekeeping function cannot be overstated." *Sardis*, 10 F.4th at 283 (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)).

"The question of whether a witness is qualified to testify is context-driven and can only be determined by the nature of the opinion he offers." *RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.*, 609 F. App'x 731, 738 (4th Cir. 2015) (internal quotation marks omitted). To guide the court in its reliability determination, *Daubert* provides a set of four considerations: "(1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise." *Sardis*, 10 F.4th at 281 (internal quotation marks omitted). This is a "non-exhaustive" list of factors a court can consider, and a court has "broad latitude to determine which of these factors (or some other unspecified factors) are reasonable measures of reliability in a particular case." *Id.* (internal quotation marks omitted). "[T]he relevance of [these] factors can 'depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 138).

At bottom, though, expert testimony is appropriate when the proffered witness is "qualified as an expert by knowledge, skill, experience, training, or education," the testimony "will help the trier of fact to understand the evidence or determine a fact in issue," "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Ultimately, the court's objective should be to ensure "that an expert, whether basing testimony upon professional studies or personal experience,

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

## II. ANALYSIS

### A. Flores's Motion in Limine: Yulonda Wyche

Flores seeks to exclude the expert opinion testimony of Yulonda Wyche, VDOC's Security Program Coordinator. In that role, Wyche is in charge of establishing the protocols for using VDOC's Adani body-scanning system and training other employees on those protocols. Wyche was timely noticed as both a fact witness[2] and an expert witness. Wyche's expert testimony would include two primary opinions: (1) "that Flores's body scan contained an anomaly consistent with contraband and inconsistent with a tampon"; and (2) "that the use of the Adani scanner at issue here was reasonable and the training provided to the officers who reviewed Flores's scan was sufficient." (Def's Br. Opp'n Pl's Mot. Limine at 2 [ECF No. 65].) Flores moves to exclude Wyche's expert testimony for three main reasons: (1) that allowing the same witness to serve as a fact witness and an expert witness would risk confusing the jury; (2) that Wyche's testimony is more properly characterized as factual testimony and does not "cross-over into the scientific, technical, or highly specialized testimony" that requires an expert designation; and (3) that Wyche's testimony is cumulative to one of VDOC's other experts—Dr. Steven Smith—who will testify as an expert on the "scientific operation

---

[2] Wyche intends to offer factual testimony about how VDOC uses Adani body scanners, trainings she has conducted for VDOC officers to become scanner operators and interpret scans, her involvement with VDOC's 2018 visitor tampon ban, and her interaction with one of VDOC's wardens about Flores's body scans prior to her firing. (*See* Def's Br. Opp'n Pl's Mot. Limine at 2 [ECF No. 65]; Pl's Br. Supp. Mot. Limine at 2 [ECF No. 53].)

of body scan image technology" and "after-the-fact interpretation" of body scan images. (Pl's Br. Supp. Mot. Limine at 3–5 [ECF No. 53].)

As to Flores's first argument, witnesses may serve as both expert and fact witnesses, provided the court take "adequate steps to make certain that the witness's dual role [does] not prejudice or confuse the jury." *U.S. v. Baptiste*, 596 F.3d 214, 224 (4th Cir. 2010) (quoting *U.S. v. Wilson*, 484 F.3d 267, 278, n.5 (4th Cir. 2007)) (cleaned up). Appropriate safeguards can include requiring the witness the testify two separate times—first as a fact witness and then as an expert; giving a cautionary or limiting instruction to the jury; requiring voir dire of the witness to "establish[] a proper foundation for the expertise"; or requiring counsel to "ground the question in either fact or expertise . . . ." *U.S. v. Garcia*, 752 F.3d 382, 392 (4th Cir. 2014); *see Baptiste*, 596 F.3d at 224. The court will employ these safeguards as appropriate when Wyche takes the stand and finds that these measures will be adequate to prevent jury confusion at trial.

Having established that Wyche could serve as both a fact and expert witness, the court must consider whether either of her proffered opinions are admissible under Rule 702. Wyche has the requisite background, training, and experience to provide expert testimony about the Adani scanner and her opinion as to what the image at issue depicts. Wyche became a certified operator of Adani body scanning technology in 2016. (Dep. of Yulonda Wyche 9:13–21, April 23, 2021 [ECF No. 65-1].) In 2017, she became a "certified train the trainer" through Adani, meaning she is able to conduct trainings for individuals who will then train other users of the body scanners. (*Id.*) She created the protocols that other VDOC employees use when operating the Adani scanner and conducts trainings for employees on these protocols. The

court is satisfied that her opinion as to the what the body-scan image reveals—based on her extensive experience with and training on this particular device—is sufficiently reliable. Moreover, this type of specialized knowledge would be helpful to the jury and is relevant to the resolution of this case. The average juror is ill-equipped to interpret a body-scan image, and a determination of what Flores's body scan reasonably depicted is essential to determining whether she was fired for a discriminatory or a legitimate reason.

Flores's argument that Wyche's testimony is cumulative of the testimony of Dr. Smith, VDOC's other expert, is unpersuasive. Dr. Smith is "an electrical engineer and an expert in body scan technology." (Def's Br. Opp'n Pl's Mot. Limine at 6.) Wyche and Dr. Smith offer different types of expertise—Wyche, a purported expert on the precise body scanning technology VDOC uses, and Dr. Smith, a purported expert on body scanning technologies more generally. Under Federal Rule of Evidence 403, "[t]he court *may* exclude relevant evidence if its probative value is *substantially outweighed* by a danger of . . . *needlessly presenting cumulative evidence*." Fed. R. Evid. 403 (emphasis added). Because Wyche and Dr. Smith both bring distinct and relevant expertise, the court finds that the danger of needlessly presenting cumulative evidence is only minimal. And that minimal danger does not outweigh the probative value of these expert opinions. The court will therefore deny in part Flores's motion *in limine* and permit Wyche to offer an expert opinion "that Flores's body scan contained an anomaly consistent with contraband and inconsistent with a tampon." (Def's Br. Opp'n Pl's Mot. Limine at 2.)

But Wyche's testimony that the training provided to VDOC employees on the Adani body scanner was sufficient or that the use of the scanner on Flores was appropriate is not

- 6 -

sufficiently reliable or helpful to the jury. Permitting Wyche to testify in this manner would be permitting her to proffer an opinion as to the ultimate fact at issue—whether training inadequacies contributed to sex discrimination. Although an expert testifying as to an ultimate fact at issue in the case is not *per se* improper under Federal Rule of Evidence 704, it can be problematic nonetheless. And it would be in this case. When it comes to the adequacy of the Adani scanner trainings, and, relatedly, the adequacy of the VDOC employees' interpretation of Flores's body scans, Wyche is a biased and interested witness because *she* conducted these trainings. Self-serving opinion testimony, particularly coming from a designated expert, poses a substantial risk of misleading and confusing a jury. VDOC asks the court to allow Wyche to testify as an expert that the training and protocols she created provided adequate training to VDOC employees. This is akin to permitting a defendant in a medical malpractice case to opine that she met the standard of care. A court would never allow that type of expert opinion, and this analogous scenario is likewise impermissible. The court will grant Flores's motion *in limine* insofar as it seeks to prevent Wyche from testifying "that the use of the Adani scanner at issue here was reasonable and the training provided to the officers who reviewed Flores's scan was sufficient." (Def's Br. Opp'n Pl's Mot. Limine at 2.)

### B. VDOC's Motion in Limine: Dr. Christina Maria Munoz

VDOC first seeks to exclude the expert testimony of Dr. Christina Maria Munoz. Dr. Munoz is a professor and practicing physician at the University of North Carolina at Chapel Hill, specializing in obstetrics and gynecology. Dr. Munoz's testimony will "provide[] a medical explanation for [Flores's] experience with menstruation, perimenopause, and the use of feminine hygiene products . . . ." (Pl's Br. Opp'n Def's Mot. Limine at 2–3 [ECF No. 71].)

Specifically, Dr. Munoz will offer the following opinions: (1) that women's menstrual cycles often change in their 40s, resulting in "heavy, prolonged, or irregular bleeding"; (2) that saturated tampons can come in many shapes and sizes depending on the brand; (3) that it is common for women to be unable to retain a tampon when having a bowel movement; (4) that women frequently use "non-standard items to deal with menstrual bleeding[,]" including toilet paper; (5) that menstrual blood flow "can vary from one hour to the next[;]" and (6) that "[t]he angle of the vagina varies from one woman to another . . . ." (*See id.* at 3–4.) Dr. Munoz's expert report further indicates her opinion that "in virtually all cultures," society "present[s] a negative image of menstruation as embarrassing and shameful" such that "[w]omen go to pains to hide evidence of menstrual bleeding" and "report shame" around anyone discovering when they are menstruating. (ECF No. 55-1, at 5.) Finally, in her deposition, Dr. Munoz testified that her "actual conclusion[]" in her report is that Flores "got fired for wearing a tampon."[3] (Dep. of Dr. Christina Maria Munoz 32:11–14, June 21, 2021 [ECF No. 55-2].)

VDOC first argues that these opinions are not relevant because this information "surrounding basic bodily functions [is] unquestionably within the purview of a typical juror." (Def's Reply Br. at 1 [ECF No. 77].) The court cannot and does not agree with this characterization. Many of these topics are not within the common knowledge and experience of all jurors, particularly those who do not menstruate. An average juror who has no experience with menstruation is unlikely to know specific details about tampon usage, menstrual blood

---

[3] As VDOC rightfully points out, Dr. Munoz was unable to point to a particular place in her expert report where she plainly stated this conclusion. (*See* Munoz Dep. at 32:21–33:3 ("Q. . . . Where did you—where is that expert opinion "I think she got fired for . . . wearing a tampon," where is that written in your report? A. I don't believe I wrote it that way. I think I wrote a lot of—a lot of medical information that supports that thought, that conclusion.").)

flow, and the changes to menstrual cycles that accompany age. These opinions are relevant to the resolution of this case because Flores alleges that what VDOC determined was contraband was actually her tampon. Dr. Munoz's testimony regarding the science and practicalities of menstruation is therefore directly relevant to that inquiry.

But opinions about menstrual shaming across various cultures, and in particular in underdeveloped countries, is not relevant to this case. Flores does not allege she experienced menstrual shaming. She does not allege that she attempted to keep the fact of her menstruation hidden from anyone during this incident. Instead, throughout the incident, she attempted to prove to VDOC's employees that she *was* menstruating. To the extent Dr. Munoz intends to testify regarding menstrual shaming and embarrassment, that testimony will be excluded as irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401, 402, 403.

VDOC also argues that Dr. Munoz's proffered testimony is not reliable, as she did not consider key facts or evidence—specifically, VDOC's investigation materials. In preparing her expert report, Dr. Munoz reviewed Flores's deposition, the body-scan images, and the training materials provided by VDOC. But Dr. Munoz did not review VDOC's documentation related to the investigation conducted by VDOC prior to firing Flores. (Dr. Munoz Dep. at 142:14–25.) Given these self-imposed limitations, Dr. Munoz's opinion as to the ultimate reason Flores was fired is not based on sufficient facts or data and she will not be permitted to offer the opinion that Flores "got fired for wearing a tampon."[4] (*Id.* at 32:11–14.) The court will therefore grant in part and deny in part VDOC's motion to exclude Dr. Munoz's testimony.

---

[4] Flores stated in her brief opposing this motion that Dr. Munoz "will not be offered at trial on [the issue of why Flores was fired] and her testimony will be limited to those facts and findings contained in her report." (Pl's Br. Opp'n Mot. Limine at 5.)

### C. VDOC's Motion in Limine: Dr. Keyhill Sheorn

VDOC also seeks to exclude the expert testimony of Dr. Keyhill Sheorn, a psychiatrist who specializes in the diagnosis of PTSD. In support of Flores's claim for damages, Dr. Sheorn is expected to opine that Flores's situation at VDOC was of a "sexual nature," and thus Flores has an increased risk of developing PTSD as a result. (*See* Report of Dr. Keyhill Sheorn, April 2021 [ECF No. 61-1, at 11].)

Importantly, Dr. Sheorn's report concludes that Flores does not meet the criteria to be diagnosed with PTSD. Dr. Sheorn opens the discussion section of her expert report stating, "While this case is not directly about post-traumatic stress disorder, it might be best understood by looking at the elements through the lens of that DSM-5 diagnosis." (*Id.* at 9.) Dr. Sheorn goes on to opine that, "Flores has some post-traumatic symptoms." (*Id.* at 11.) She concludes that, "Due to the sexual nature of the violation, her chance of developing PTSD is increased from about 8% from the general risk to closer to 30% in cases involving rape." (*Id.*)

The court finds that this testimony is neither relevant nor reliable. It is not relevant because Flores does not have PTSD. Dr. Sheorn's testimony about Flores's "post-traumatic symptoms" including sleeping difficulties and anxieties are only marginally relevant as to damages. To the extent those effects are relevant to the issue of damages, Flores and/or her treating provider are equipped to explain them and these difficulties are within the purview of the typical juror. *See Dillard v. Smith*, No. 7:20-cv-151, 2021 WL 4059629, at *1–2 (W.D. Va. Sept. 7, 2021) (holding that plaintiff could testify as to basic physical and medical conditions that are within the common understanding of the jury without expert evidence).

Dr. Sheorn's testimony is not sufficiently reliable because neither Flores's treating provider nor Dr. Sheron actually diagnosed her with PTSD. And testimony that Flores has an increased likelihood of developing PTSD is not based on an application of the DSM-5 criteria to Flores. In reaching this conclusion, Dr. Sheorn only reviewed the "scant documentation" that Flores's treating provider kept. (*See id.* at 11.) She did not independently interview Flores before preparing her report. (*See* Dep. of Dr. Keyhill Sheorn 9:19–10:3, June 23, 2021 [ECF No. 61-2].) She provides no explanation or stated basis for her opinion that Flores's risk of developing PTSD has increased from 8% to 30% as a result of this incident—other than the assumption that the incident at issue was analogous to a sexual assault. The court finds that this conclusion requires an inferential leap to be sufficiently reliable, and such a leap is not supported by the facts of this case, sufficient data, or reliable methodology. Furthermore, testimony to this effect could confuse jurors and lead them to believe that Dr. Sheorn has, in fact, assessed a PTSD diagnosis for Flores, when that is not the case. The court will not permit this irrelevant, unreliable, and potentially prejudicial testimony before a jury and will therefore grant VDOC's motion to exclude the testimony of Dr. Sheorn.

### D. VDOC's Motion in Limine: Dr. Jordan Haber

Finally, VDOC seeks to exclude the expert testimony of Dr. Jordan Haber, a radiologist and professor of radiology who, after reviewing Flores's body scans, opined in his report that the "foreign body [depicted] is compatible with a tampon." (Report of Dr. Jordan Haber, May 13, 2021 [ECF No. 76-1.]) Dr. Haber's testimony will be juxtaposed with the testimony of VDOC's two experts who will testify that Flores's scans are consistent with contraband, rather than a saturated tampon.

VDOC first argues that Dr. Haber is insufficiently qualified to interpret these body scans because he has little experience interpreting scans that have been produced from an Adani body scanner. This is a strained argument. Dr. Haber has spent over 40 years of his career reading X-rays and interpreting radiographic images. As he explained, the medical-grade x-rays and body-scan images are "very, very similar" although "[t]here's a difference in resolution." (Dep. of Dr. Jordan Haber 11:21–12:16, July 27, 2021 [ECF No. 76-2].) Over the years Dr. Haber has interpreted thousands of radiographic images, including many of women utilizing feminine hygiene products. (*See id.* at 18:2–19:24 ("When you image a woman who is menstruating, there's a possibility that she'll have a tampon, so in that context of seeing half of my patients are women . . . those that are menstruating very frequently will have a tampon.").) The court finds no merit in this argument.

VDOC also argues that Dr. Haber's opinion about Flores's scan was not the product of the processes typically relied on by radiologists—either a "blind" or "informed" reading. (*Id.* at 20:4–23.) When a radiologist conducts a blind reading, they have no knowledge of the patient's medical history and are simply asked to interpret the image. (*Id.*) In an informed reading, a radiologist reviews an image with the benefit of having access to a patient's history. (*Id.* at 21:4–22:9.) Here, Dr. Haber interpreted the scan with the benefit of a bit of Flores's history, based on her attorney's representation that Flores was menstruating at the time this image was taken. (*Id.* at 21:17–22:2.) As Dr. Haber put it, this approach falls "somewhere in the middle" between a blind and informed reading. (*Id.* at 22:3–9.) The court notes that neither a blind or informed approach is applicable in this case because Dr. Haber was not asked to provide a medical diagnosis for Flores—as a radiologist is typically called upon to do—only

to interpret what the object was in her body cavity. Reviewing a scan and reaching a conclusion, as Dr. Haber has done here, are straightforward tasks for a radiologist and the court is satisfied that his methods are sufficiently reliable to permit this testimony before a jury.

Lastly, VDOC argues that Haber did not comply with Federal Rule of Civil Procedure 26(a)(2), in that his report does not adequately disclose and explain his proffered testimony and provide a basis for his opinions. VDOC seems to rely on the fact that his report is just 12 lines long and that he conceded at his deposition that he had looked at Google images to get additional information on contraband packaging prior to being asked to render an opinion. But reading a scan is a simple task for an experienced radiologist like Dr. Haber and does not require much explanation. Dr. Haber simply describes what he sees in the scan, and that description is sufficient to satisfy the disclosure requirements given the targeted nature of his opinion testimony. The court is satisfied that Dr. Haber's report sufficiently explains his methodology and basis for his opinion.

### III.  CONCLUSION

For the above reasons, the court will grant in part and deny in part Flores's motion *in limine* to exclude the testimony of Wyche (ECF No. 52); grant in part and deny in part VDOC's motion *in limine* to exclude the testimony of Dr. Munoz (ECF No. 54); grant VDOC's motion *in limine* to exclude the testimony of Dr. Sheorn (ECF No. 60); and deny VDOC's motion *in limine* to exclude the testimony of Dr. Haber (ECF No. 75).

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 17th day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE